HARRY L. SEMLER v. KANSAS CITY PUBLIC SERVICE COMPANY, a Corporation, Appellant.—No. 39729.—196 S. W. (2d) 197.

Division Two, September 9, 1946.

*Charles L. Carr, John T. Harding, David A. Murphy, R. Carter Tucker* and *John Murphy* for appellant.

*Ben W. Swofford* and *Robert L. Jackson* for respondent.

BOHLING, C.—The Kansas City Public Service Company, a corporation, appeals from a judgment awarding Harry L. Semler $10,000 for injuries sustained while on one of defendant's streetcars. Defendant attacks plaintiff's submission under the res ipsa loquitur doctrine and the amount of the judgment.

On the afternoon of May 8, 1943, plaintiff, a postman, finished the delivery of his route and became a fare-paying passenger on one of defendant's eastbound streetcars at 47th street and Paseo. Plaintiff noticed that the first cross seat (approximately 8 or 9 feet back into the body of the car) on the north side was vacant. When he was about a step from this seat the streetcar, which had started, made a sudden and violent stop, throwing plaintiff backward (eastward) and causing his left leg to drop from the body of the car into its vestibule and plaintiff to fall backward to the floor of the vestibule with his left leg locked around a stanchion in the streetcar. Two men lifted him that he might disengage his leg.

Plaintiff's instructions, in conformity with his petition, predicated a verdict against defendant on general negligence; and de-

fendant claims plaintiff waived all rights to go to the jury on a res ipsa loquitur or a general negligence submission because plaintiff's evidence clearly established the precise and exact cause of the accident or injuries complained of. Defendant relies upon Conduitt v. Trenton Gas & El. Co., 326 Mo. 133, 143, 31 S. W. 2d 21, 25; Tate v. Western Union Tel. Co., 336 Mo. 82, 91, 76 S. W. 2d 1080, 1083; Powell v. St. Joseph Ry. Lt. H. & P. Co., 336 Mo. 1016, 1021, 81 S. W. 2d 957, 960; Berry v. Kansas City Pub. Serv. Co., 343 Mo. 474, 483, 121 S. W. 2d 825, 830; Heidt v. People's Motorbus Co. of St. Louis, 219 Mo. App. 683, 686, 284 S. W. 840, 841.

At the time of his fall plaintiff had his back to the motorman and made no attempt to narrate events leading up to the sudden stopping of the streetcar. Defendant's position is based upon testimony of plaintiff's witness Dr. Harry Morton, who was seated next to the aisle on the first or second cross seat of the streetcar, facing the front of the car. Forty-seventh street is an east and west street and defendant's double tracks, eastbound and westbound, cross Paseo a short distance north of 47th street, running substantially parallel thereto. Paseo is divided into two driveways, the west driveway is used for southbound motor vehicle traffic and the east driveway is used for northbound motor vehicle traffic. Dr. Morton's testimony on the issue, in narrative, was to the following effect: The streetcar started into the intersection. Witness saw a southbound automobile, traveling at an estimated speed of 50 miles an hour, trying to beat the streetcar across the intersection. The automobile was going too fast. It was right in front of the streetcar; the whole picture was right there; first, it was north of the streetcar, then right in front of the streetcar, then south of the streetcar. Witness could not estimate how far the automobile was from the streetcar when he first saw it. Witness testified that the motorman stopped the streetcar just in time to miss hitting the automobile; if he "had not suddenly slowed down or stopped" there would have been a collision. The automobile drove squarely into the path of the streetcar. Witness testified he had not been on streetcars when the motorman stopped in such manner as to cause people to fall to the aisles, but that he had experienced stops as sudden as this on one or two occasions to avoid an accident, and this was the only stop of that nature on that particular trip. Dr. Morton did not notice which way the motorman was looking at the time the streetcar started across the intersection. Asked if he heard the motorman signal when he started, he answered "I don't recall." He could not state the speed of the streetcar, whether it was more or less than 15 miles an hour.

The testimony offered by defendant established the unusual suddenness of the stop and plaintiff's fall. The motorman testified there was no obstruction to his view of the approaching automobile but he had not noticed the automobile until it was within 25 feet of the

streetcar; that he believed the brakes of the streetcar were in good order but they were not used; that he reversed the car, it being the only immediate brakeage-he could get in the circumstances; that he could not say it would stop the car quicker than an emergency brake; that if he had been "expecting it" he would have used the emergency stop rather than reversing the car; that reversing the car starts the wheels turning in reverse, generates the motors backwards immediately, and "does lend a sudden jerk to it." He places the speed of the streetcar between 10 and 15 miles an hour.

Plaintiffs must generally plead and prove the specific negligence upon which they base a recovery in tort actions. The res ipsa loquitur doctrine is an exception to that general rule existing to prevent a miscarriage of justice in those limited and applicable instances wherein a plaintiff can neither plead nor prove the specific negligence causing his injuries. The doctrine finds frequent application in actions by passengers against carriers for personal injuries. The following cases sustain a plaintiff's right to a res ipsa loquitur submission where a sudden jerk or jolt occasions injury to a common carrier passenger. Briscoe v. Metropolitan St. Ry. Co., 222 Mo. 104, 114(II), 120 S. W. 1162, 1164(2), stating: "The fact of a violent and unusual stop, with the consequent injury to plaintiff, is sufficient to require of the defendant an explanation of its conduct . . ."; Hurley v. Missouri Pac. Transp. Co. (Mo. App.), 56 S. W. 2d 620, 621(3, 4), (certiorari quashed on another issue, 334 Mo. 537, 66 S. W. 2d 524); Rhodes v. Missouri Pac. Rd. Co., 213 Mo. App. 515, 255 S. W. 1084; Thompson v. Kansas City Pub. Serv. Co., 232 Mo. App. 1124, 114 S. W. 2d 145. A plaintiff is not entitled to a res ipsa loquitur submission if he pleads and proves specific negligence or, pleading general negligence, proves specific negligence as the basic principle of the doctrine is plaintiff's lack of knowledge of the specific negligence causing the injury. Defendant's cases are the type wherein the plaintiff proved the specific negligence occasioning the injury and hence he was considered to have waived the benefit of the doctrine. The rule is thus expressed in Powell v. St. Joseph Ry. Lt. H. & P. Co., supra: "Thus, the res ipsa loquitur rule aids the injured party who does not know and therefore cannot plead or adduce proof showing the specific cause of or how the event which resulted in his injury occurred, but if he knows how it came to happen, and just what caused it, and either specifically pleads or proves the cause, there is neither room nor necessity for the presumption or inference which the rule affords. . . . 'The plaintiff . . . cannot in effect say to the jury, "I have shown you exactly how the accident occurred but you are, nevertheless, still at liberty to speculate and presume it may have happened some other way." ' "

Plaintiff proved the defendant's specific negligence in the cases relied upon by defendant. For instance, in Powell v. St. Joseph Ry.

L. H. & P. Co., supra, plaintiff's evidence established defendant's specific negligent act to be the stopping of defendant's bus immediately in the path or in front of the other motor vehicle to such an extent as to preclude the inference of any other specific negligent act. The Powell, as well as the Conduitt and Berry cases, supra, cited by defendant, recognize that a plaintiff does not lose the benefit of the res ipsa doctrine by introducing some evidence of defendant's negligence where it falls short of establishing the specific and precise negligence causing the injury.

Defendant's contention is built around the word "cause." Defendant labors under a misapprehension of the sense in which the term is used. It is a defendant's negligence ▮▮▮ that may be inferred from proof of the act occasioning plaintiff's injury. The doctrine does not raise a presumption from the fact of plaintiff's injury that a named defendant's act produced the injury or that a named defendant was negligent. Plaintiff has to prove what occasioned or legally caused the injury. Who can say that a named defendant was negligent until he knows what occasioned plaintiff's injury? There is a difference between inferring what did the injury and inferring from a proved act occasioning an injury that there was negligence in that act. Res ipsa loquitur has no application to the first. When the thing occasioning the injury is unknown it cannot speak or indicate a named defendant was guilty of actionable negligence. In the instant case the inference of negligence arises from the act that caused plaintiff's injury, the sudden and violent stop of the streetcar, and not from the fact plaintiff was injured.

In Price v. Metropolitan St. Ry. Co., 220 Mo. 435, 453(I), 456 (b), 119 S. W. 932, 936(1), 937(b), a common carrier passenger was injured by the unusual occurrence of a collision of two cars under the management, control and operation of the carrier. The court observed: "The full details of this collision were before the jury. With this situation proven there arises for the protection of a passenger a presumption of negligence on the part of the carrier . . ." A contention of the carrier was that because plaintiff "put in proof of some specific acts of negligence" plaintiff waived the presumption she was entitled to under her plea of general negligence. The court ruled: ". . . but it does not lose her the right of resting upon the presumption, if the evidence so introduced does not clearly show what did cause the accident." The court was speaking to "proof of some specific acts of negligence." To the same effect: Porter v. St. Joseph Ry. L. H. & P. Co., 311 Mo. 66, 76(III), 277 S. W. 913, 916(6); Briscoe v. Metropolitan St. Ry. Co., 222 Mo. 104, 114(II), 120 S. W. 1162, 1164(2).

In Tate v. Western Union Tel. Co., supra, plaintiff was injured as the result of an electric shock when a workman, who was taking down a telegraph wire which crossed high tension wires with the idea

of avoiding contact therewith, upon feeling a slight shock after cutting the message wire, dropped it upon the high tension wires. The court considered the charge and proof of negligence to be as specific "as the simplicity of the act of carelessness permitted or required."

Heidt v. People's Motorbus Co., supra, stressed by defendant, is authority (as stated in Story v. People's Motorbus Co., 327 Mo. 719, 725(b), 37 S. W. 2d 898, 900(6)) for the proposition that the mere skidding of a motorbus on a wet and slippery street on a rainy day is insufficient to give rise to a presumption of negligence "without some fact or circumstance connected therewith from which negligence may be inferred. . . . If there had been any evidence offered on the part of plaintiff or defendant tending to show that the driver of the motorbus . . . had attempted to avoid striking another car . . . it would then be a question for the jury."

In the instant case plaintiff's evidence went to establish that the occasion for the motorman making the sudden stop was the operation of the motor vehicle across the path and immediately in front of the streetcar at a high rate of speed; but plaintiff did not go further and attempt to prove the specific negligent act of defendant (such as a failure to maintain a proper lookout or reversing the car instead of applying an emergency brake) in causing the streetcar to come to such a sudden and violent stop as to throw plaintiff backwards as described in the evidence.

Is the judgment for $10,000 excessive? The trial court indicated the $15,000 verdict was excessive by $5,000. Plaintiff entered a remittitur of $5,000, the motion for new trial was overruled and judgment entered. The issue calls for a consideration of the evidence in its most favorable light to plaintiff.

Plaintiff was about 46 years of age when injured, in good physical health, strong, able bodied, and dependable. He had been a postman for about 30 years and had ▓▓▓ missed only three days' work in the preceding six years. His regular route was 16-½ miles long. He worked extra time for the post office department and sometimes carried one-third of another route. He also engaged in painting and papering and raising gladioli bulbs for commercial purposes. His extra earnings averaged $50 monthly. These practically ceased because of his injury and he has not kept abreast of the work he should do around his home.

Plaintiff's fall caused injuries to the small of his back, from the ribs down to his hip, his left knee, ankle, and shoulder. Two-thirds of the left side of his back was greatly discolored. He sought a doctor to get relief from pain. He reported he could not carry his route. The post office department sent him to Dr. John Outland about the third or fourth day after the injury. Dr. Outland found plaintiff's left shoulder sore and tender; his left ankle and knee swollen and

discolored and the muscles of his back tense and in spasm. He diagnosed plaintiff's condition as a sprained shoulder, a sprained back and an injury to the semilunar cartilage of the left knee. The back injury was in the sacroiliac region, the small of the back, which supports the weight of the body. Between May 13 and June 3, 1943, plaintiff received diathermy treatments about every day under the supervision of Dr. Outland and was told he might return to work. Other testimony was that the accident had "slowed" plaintiff's actions, that he walked with a limp and slowly; that he lost about 20 pounds in weight; that he becomes easily fatigued; that his health is not as good as prior to his injury; and that he is irritable.

When plaintiff went back to work June 5th he would put up the mail for two or three routes and would carry mail to finish a day's work. He lost two or three days a week for the first four weeks on account of the condition of his leg, which he would have to rest, and was off a day or two a week for the next three or four months. He lost a day, occasionally two, a week for sometime thereafter. His back and knee would not hold up under his work. His knee would "lock" and throw him, that is, his knee joint would not function properly at times to straighten or to bend his leg in walking, causing him to fall. When arising in the morning he had to test his leg. He still suffered pains in his back, especially when lifting. He cannot lift the weight he should lift in doing his work. He stated his back was better than immediately after the injury but that his knee was worse.

Dr. Outland re-examined plaintiff in April, 1945. He had a cystoscopy examination made but plaintiff's kidney was found to be in proper condition. Plaintiff testified he was in the hospital nine days at that time and that the examination was very painful. Dr. Outland concluded that the semilunar cartilage of plaintiff's left knee had been broken, a big piece chipped off that should be removed by an operation. The operation is usually performed on young men, who have a complete recovery in about a year. On account of plaintiff's age, Dr. Outland refused to say plaintiff would recover in a year but he expected him to show a great improvement and be able to use his leg without the pain he now experienced. Dr. Outland testified plaintiff had a disability in his back at the time of the trial and he did not know about its ultimate improvement but the longer such condition continues without complete recovery, the less likelihood of a complete recovery.

In Taylor v. Lumaghi Coal Co., 352 Mo. 1212, 1224, 181 S. W. 2d 536, 540, a judgment of $15,000 was reduced to $10,000. Plaintiff was a man of 55, earning $200 monthly, and his injury was a tearing loose of both semilunar cartilages from the lower bond of a knee joint. The testimony was that an operation would not help a man of his age and might result in a worse condition.

In Turner v. Central Hdwe. Co., 353 Mo. 1182, 1195, 186 S. W. 2d 603, 610, plaintiff was 57, earned $50 weekly and suffered "a very badly comminuted fracture through the left tibia that extended into the knee joint and both sides of the knee were depressed pretty much." He had a fifty per cent disability of the knee and a one inch shortening of the leg. He had medical expense of $600 and a loss of wages of $1,250. A $15,000 judgment was held excessive by $5,000.

In Mrazek v. Terminal Rd. Ass'n., 341 Mo. 1054, 1063, 111 S. W. 2d 26, 31, plaintiff was 60 years of age, earning $100 monthly and suffered a comminuted fracture of the right tibia below the knee, resulting in approximately 40% permanent loss of the use of the leg. Considering age, expectancy and earnings, a $15,000 judgment was held excessive by $5,000.

Dodd v. Missouri-Kan.-Tex. Rd. Co., 354 Mo. 1205, 193 S. W. 2d 905, 907, observes that the ruling of a trial court with respect to the excessiveness of a verdict is generally sustained upon appeal in the absence of an abuse of discretion. By directing a remittitur of $5,000 in the instant case the court impliedly considered a judgment of $10,000 not excessive. It had the witnesses, including plaintiff, before it. He suffered injuries not only to his knee, but also to his back, ankle, and shoulder. He will have to submit to an operation to become free from the pain in his knee. He had not had a complete recovery of his back injury at the time of the trial, two years after the injury. Considering that plaintiff suffered injuries to his back in the sacroiliac region which had not completely healed in two years, as well as to his shoulder, ankle, and knee, and that an operation (definitely disabling for a time) on his knee is necessary to give relief to that injury, we think defendant's cases do not disclose error calling for our interference and a holding that the trial court abused its discretion when it permitted a judgment for $10,000 after directing a remittitur of $5,000. Consult Webb v. Missouri-Kan.-Tex. Rd. Co., 342 Mo. 394, 399, 116 S. W. 2d 27, 30; Gately v. St. Louis-S. F. Ry. Co., 332 Mo. 1, 20, 56 S. W. 2d 54, 63. See the cases collected in Brady v. Terminal Rd. Ass'n., 344 Mo. 502, 508, 127 S. W. 2d 1, 5, dealing with the amount of the verdict for spinal and back injuries.

The judgment is affirmed. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.