245 S.W.2d 659 (1952)
WILLIAMS
v.
ST. LOUIS PUBLIC SERVICE CO.
No. 28189.
St. Louis Court of Appeals, Missouri.
January 15, 1952.
Motion for Rehearing Denied February 15, 1952.
Transferred to April 14, 1952.
*660 Salkey & Jones, and Carroll J. Donohue, all of St. Louis, for appellant.
Barnhart & Wood, C. V. Barnhart, and Marvin S. Wood, all of St. Louis, for respondent.
Transferred to Supreme Court April 14, 1952.
ANDERSON, Judge.
This is an action by Annie Williams, as plaintiff, against the defendant, St. Louis Public Service Company, to recover damages for personal injuries alleged to have been sustained by plaintiff on February 10, 1950, while a passenger on one of defendant's streetcars. The trial below resulted in a verdict and judgment for plaintiff in the sum of $4,950. From this judgment, defendant has appealed.
The case was pleaded and submitted on the theory of res ipsa loquitur, the petition alleging that while plaintiff was walking to the rear of the car after having paid her fare, "defendant negligently caused and permitted said streetcar to suddenly check its speed and to receive an extraordinary, unusual jerk, lurch and shock, whereby plaintiff was caused to be thrown to the floor thereof with much force and violence * * *.'
In this court, defendant complains of the trial court's action in giving plaintiff's Instruction No. 1. By said instruction the case was submitted to the jury on the res ipsa loquitur doctrine. The basis of defendant's complaint against said instruction is that, since plaintiff's evidence disclosed the specific cause of the accident, plaintiff was not entitled to go to the jury on the doctrine of res ipsa loquitur.
Plaintiff testified:
" * * * I got on the car and I paid my fare and started back to take a seat. On my way back, when the car started up and by the time I got middleways between the front door and the exit door, all of a sudden the car gave a jerk and it jerked me back and it threw me flat out on my arm * * *.
"Q. Did you fall backwards or forwards? A. Forwards.
"Q. Did one of your arms strike the floor? A. Yes. * * * I just fell flat out on the floor in the aisle.
"Q. You were walking at the time that happened? A. Yes, sir.
"Q. And the streetcar was in motion at that time? A. It was. * * *
"Q. You don't know what the traffic conditions were outside, or anything about that? A. No, I wasn't looking at that. I was trying to walk back to take a seat. * * * * * *
"Q. As I understand it, there was a jerk. Is that right? A. Yes.
"Q. What kind of a jerk was that, Mrs. Williams? A. Just a hard jerk; throwed me out of balance, off my feet. * * * The way I noticed it, it seemed to slow and give a sudden jerk."
Jean Cobble, who was a passenger on the streetcar and witnessed plaintiff's accident, testified for plaintiff as follows:
"Q. Where abouts did you sit on the streetcar? A. On the lefthand side about the center of the car.
* * * * * *
"Q. Did you see anything unusual occur on that streetcar about the time it left the Horton Place stop? A. Well, I looked down and there was a colored womanI didn't see her fall, but her arm was still in motion. I mean I saw her arm before it stopped moving. Her arm was outstretched. * * * Well, her arm was right in front of me.
"Q. Did you notice anything about the movement or the motion of the streetcar at about that same time? A. Yes, there was a slight jerk.
"The Court: How is that? "The Witness: There was a jerk." On cross-examination this witness testified:
* * * He already started up and then she paid her fare. We had started up and she put her money in her purse, and then she started to walk on back and then I looked away; * * *
"Q. It was after that that she fell? A. She fell just then, because I looked back in a second and she was throwed off her feet. * * * * * *
"Q. Had you ever been on a streetcar that moved like that before? A. Yes.
*661 "Q. Does it happen quite often on that Hodiamont streetcar line over there? A. Well, I wouldn't say quite often; occasionally, it does.
* * * * * *
"Q. * * * As that streetcar was proceeding along after this lady got on, did it run along that track there just as it usually does every day? Was there anything different in the manner in which that streetcar moved on this particular day than there was on the other days you ride? A. Not especially."
On re-cross examination the witness testified:
"Q. * * * Did you tell the police officers that the streetcar jerked because you couldn't see any other reason why she fell? Was that the basis for saying that? A. No, that wasn't it exactly. I will tell you about that jerk. It wasn't like this: We were just going along and the streetcar gave a sudden jerk; * * * We were going across, what street I don't remember, and he put on the brakesanyhow, he started slowing down for this street, because there was a car coming from the left side. He put on his brakes and he didn't totally stop, and then he went on again rather fast.
"Q. In other words, this jerk that you noticed took place at some intersection, is that right, an intersection with another street? A. It started, yes.
* * * * * *
"Q. You say he put on the brakes and slowed the streetcar down a little bit but did not completely stop. You say that was for an automobile? A. Yes.
* * * * * *
"Q. This was an automobile, wasn't it, that passed in front of the streetcar? A. Yes.
* * * * * * "Q. * * * Did it happen where a street crosses? A. Sort of an alley; I don't know the name of it. * * *
"Q. How close in front of the streetcar was that automobile? A. Well, just in front of it; I don't know. * * * it was close enough that there would be a question whether the streetcar should go on or the automobile should go on.
"Q. The streetcar stopped and let the automobile go on? A. He didn't stop.
"Q. He slowed down to let the automobile go on? A. Well, the lady goes and gets on and he starts up and then we come to this street and he sort of slows down. That was normal. And then as soon as the automobile went on he speeded up.
* * * * * *
"Q. You have been on streetcars before that stopped with automobiles going in front of it? A. Naturally, yes.
"Q. * * * this movement you described of the streetcar, happens quite often? A. I wouldn't say it is exactly the same.
"Q. * * * have you felt the same motion on a streetcar before or since this happened, slowing down and starting up again? A. Well, this was a little more, just a little more heavy than usual; a little fasterquicker.

* * * * * *
"Q. One further question: I believe you said when the streetcar was slowing down at that point, then it started forward and that is when the jerk occurred? A. Yes, sir."
There can be no question but that the testimony of plaintiff, standing alone, made out a case for the application of the res ipsa loquitur doctrine. Appellant does not contend otherwise, but urges that, by the testimony of Jean Cobble, plaintiff made out a prima facie case of specific negligence which had the effect of depriving plaintiff of the right to have the case submitted to the jury under the res ipsa loquitur theory.
The principle of law relied on by appellant is well established. The doctrine of res ipsa loquitur, being a rule of necessity, cannot be invoked where a plaintiff presents substantial evidence of specific acts of negligence as the cause of the injury about which complaint is made. McAnany v. Shipley, 189 Mo.App. 396, 176 S.W. 1079; Cook v. Union Electric Light & Power Co., Mo.App., 232 S.W. 248;
*662 Grimes v. Red Line Service, 337 Mo. 743, 85 S.W.2d 767; Berry v. Kansas City Public Service Co., 343 Mo. 474, 121 S.W.2d 825; Powell v. St. Joseph Ry. Light, Heat & Power Co., 336 Mo. 1016, 81 S.W.2d 957; Lochmoeller v. Kiel, Mo.App., 137 S.W.2d 625; Heidt v. People's Motorbus Co., 219 Mo.App. 683, 284 S.W. 840; McGrath v. St. Louis Transit Co., 197 Mo. 97, 94 S.W. 872; Duncker v. St. Louis Public Service Co., Mo.App., 241 S.W.2d 64; Venditti v. St. Louis Public Service Co., 360 Mo. 42, 226 S.W.2d 599. And while it is true that under the decisions the benefit of the res ipsa loquitur doctrine will not be lost if, after plaintiff's evidence is received, the precise cause of the accident remains in doubt or is not clearly shown, such qualification is satisfied if the inference of specific negligence to be drawn from plaintiff's evidence is a reasonable one, sufficient to establish a prima facie case. Venditti v. St. Louis Public Service Co., 360 Mo. 42, 226 S.W.2d 599; Hill v. St. Louis Public Service Co., 359 Mo. 220, 221 S.W.2d 130.
Did plaintiff make a case of specific negligence by the testimony of Jean Cobble?
It appears from the testimony of Mrs. Cobble that she was a passenger on the streetcar at the time plaintiff boarded it at Horton Place. Mrs. Cobble sat on the lefthand side at about the center of the streetcar. She stated that after plaintiff entered, the streetcar started forward; that plaintiff then paid her fare, and started to walk toward the rear of the car. Mrs. Cobble did not observe plaintiff thereafter until after plaintiff fell. Plaintiff fell when she came opposite the seat in which Mrs. Cobble was sitting.
It further appears from Mrs. Cobble's testimony that as plaintiff proceeded down the aisle the streetcar approached and entered an intersecting street or alley, at which time an automobile passed from left to right in front of the streetcar. Mrs. Cobble stated that the automobile, as it passed in front of the streetcar, "was close enough that there would be a question whether the streetcar should go on or the automobile should go on." In order to avoid colliding with the automobile defendant "put on the brakes, started slowing down * * * because there was a car coming from the left side. He put on his brakes and he didn't totally stop, and then he went on again rather fast." That there was no jerk or unusual movement of the streetcar as a result of the application of the brakes is clear from Mrs. Cobble's testimony. She stated: "we come to this street and he sort of slows down. That was normal." The unusual movement came later. Mrs. Cobble testified:
"He put on the brakes and he didn't totally stop, and then he went on again rather fast. * * * And then as soon as the automobile went on he speeded up. * * * this was a little more, just a little more heavy than usual; a little fasterquicker.
"Q. * * * I believe you said when the streetcar was slowing down at that point, then it started forward and that is when the jerk occurred? A. Yes, sir."
After considering the above testimony, we are of the opinion that plaintiff made a prima facie case of specific negligence on the part of defendant's motorman. From said evidence it could be reasonably inferred that the motorman, at the time, was negligent in handling the mechanism that regulated the flow of power to the streetcar in question, thus causing a sudden and rapid acceleration in the movement of the streetcar, which has been characterized by the plaintiff and her witnesses as a "sudden jerk." See Dashman v. St. Louis Public Service Co., Mo.App., 239 S.W.2d 553. In fact, no inference as to the cause of the plaintiff's injury could reasonably be drawn other than the above mentioned specific negligence of the motorman. Therefore, it cannot be said that the cause of the plaintiff's injury remains in doubt, or is not clearly shown by the evidence. Powell v. St. Joseph Ry. Light, Heat & Power Co., 336 Mo. 1016, 81 S.W.2d 957; Venditti v. St. Louis Public Service Co., 360 Mo. 42, 226 S.W.2d 599; Hill v. St. Louis Public Service Co., 359 Mo. 220, 221 S.W.2d 130.
Respondent relies upon Belding v. St. Louis Public Service Co., 358 Mo. 491, 215 *663 S.W.2d 506; Mueller v. St. Louis Public Service Co., 358 Mo. 247, 214 S.W.2d 1; Mochle v. St. Louis Public Service Co., Mo.App., 229 S.W.2d 285; and Hale v. St. Louis Public Service Co., Mo.App., 238 S.W.2d 876. In each of said cases it appears that the facts proved by the plaintiff therein went no further than to afford an equal basis for inconsistent conclusions, hence no clear case of specific negligence was shown. Bowers et ux. v. Columbia Terminals Co. et al., Mo.App., 213 S.W.2d 663. Such is not the situation in the case at bar. The court erred in giving and reading to the jury Instruction No. 1.
Appellant next contends that the court erred in giving Instruction No. 5, for the reason that said instruction lessened and improperly described the burden of proof, invaded the province of the jury, improperly directed a verdict for plaintiff, and was inconsistent with and destructive of Instruction No. 1.
Instruction No. 5 is as follows: "The Court instructs the jury that if you find from the credible evidence that facts to be as submitted to you in Instruction No. 1, then plaintiff has met and carried the burden of proof required of her under the law and the instructions herein."
Instruction No. 1 is as follows: "The Court instructs the jury that if you find and believe from the evidence that on the occasion in question plaintiff boarded defendant's streetcar at the place mentioned in evidence and that she was in the act of walking from the front of said streetcar toward the rear thereof for the purpose of being seated thereon and that while plaintiff was so doing, if you so find, defendant's streetcar was started in motion and that thereafter it jerked or lurched in an extraordinary and unusual manner and that as a direct result thereof plaintiff was thrown forward and to the floor of said streetcar and thereby injured, if you so find, then the court instructs you from such facts aforesaid, if you believe them to be true, you may infer that defendant was negligent, and you may so find, unless you find and believe from all the facts and circumstances in evidence, that the aforesaid occurrence, if so, was not due to defendant's negligence; and if you do find and believe from all the facts and circumstances in evidence that defendant was negligent and that plaintiff's injuries, if any, were directly caused by defendant's negligence, then your verdict should be in favor of plaintiff and against the defendant St. Louis Public Service Company, a corporation."
For defendant, the court gave Instruction No. 4, which is as follows:
"The Court instructs the jury that the burden of proof is on the plaintiff to show by the greater weight of the credible evidence that defendant was negligent and that plaintiff's injuries, if any, were the direct result of the negligence of the defendant.
"You should not find that the defendant was negligent from the mere fact of the occurrence shown by the plaintiff's evidence, if you find and believe from all the evidence in the case that the defendant was not negligent, and if you do find and believe from all the evidence in the case that the defendant was not negligent, then your verdict should be in favor of the defendant."
In the case of Venditti v. St. Louis Public Service Co., Mo.Sup., 240 S.W.2d 921, an instruction practically identical with Instruction No. 5 was held proper as against an attack on the same grounds as is here urged against Instruction No. 5. We are bound by that decision. Constitution of Missouri, Article V, Section 2, V.A.M.S.
Appellant also assigns as error the action of the trial court in permitting plaintiff's witness Lester Ficke, a police officer, to testify that a few minutes after the accident Jean Cobble, in an interview with him, stated that the streetcar gave a sudden jerk. It is urged that said testimony was not competent, being hearsay, and not relevant to any issue in the case. Respondent contends that the evidence was properly received to rehabilitate the witness Jean Cobble, whose testimony had been impeached by the showing of a statement made by her several days after the accident, *664 which statement was inconsistent with the testimony she gave on the witness stand.
The impeachment of Jean Cobble occurred during her cross-examination. She testified that about a week or ten days after the accident she received from the defendan a questionnaire which she filled out in her own handwriting and returned to the defendant. She then, at counsel's request, read to the jury certain portions of this questionnaire, among which was the following question and answer:
"If moved (streetcar) was there any unusual motion?
"Nothing unusual that I noticed. I don't ride streetcars often."
Later, during re-cross examination, the witness testified as follows:
"Q. Didn't you say here, just a couple of days after the accident you said, a week or ten days after, you said `there was nothing unusual as I noticed.' A. Yes, I certainly did. Do you know why? You want to know why?
"Q. Yes. A. I didn't want to be dragged down here. I thought if I filled out the tickets I wouldn't have to come.
"Q. You mean to say on this report you didn't tell the truth? A. That's right, but for a reason.
"Q. Well, are you telling the truth now? A. Yes, sir, I am under oath."
Thereafter, Officer Lester Ficke was put on the stand and gave the following testimony:
"Q. Did Jean Cobble make any statement to you at the time you obtained her name in regard to the manner in which the accident occurred? * * * A. She did make a statement.
"Q. * * * did you incorporate the substance of her statement into your official police report? A. I believe I did.
"Q. * * * I will ask you to tell the court and jury what statement, if any, she made to you in regard to the movement of the streetcar in question. * * * A. The witness stated about the time of the accident the car did give a sudden jerk."
Cross-examination:
"Q. Do you remember the exact words Mrs. Cobble used, the exact language? A. If I remember right, I asked her the second time and she stated the streetcar did give a jerk.
"Q. Did she say she supposed it did? That is possible that is what she said? A. She said it did give a jerk.
"Q. Is it possible she said she assumed the streetcar gave a jerk because she couldn't see any reason why the plaintiff fell? A. Not that I remember.
"Q. Will you testify she didn't say that, didn't use those wards? A. No, I wouldn't.
"Q. Your recollection isn't that accurate. Is that right, officer? A. That's right."
At the present time the courts of all jurisdictions are unanimous in holding that proof of statements made by a witness out of court, similar to and in harmony with his testimony, are, as a general rule, inadmissible. To admit such testimony would be violative of the hearsay rule. There are well known exceptions to this rule. In fact, the exceptions have become so well established that they may be said to constitute independent rules. However, we, on this appeal, are concerned only with that exception which permits the use of antecedent declarations where there is an attempt to impeach the witness by proof of statements made by him inconsistent with his testimony at the trial.
There are a number of Missouri cases holding such evidence admissible. State v. Grant, 79 Mo. 113; State v. Whelehon, 102 Mo. 17, 14 S.W. 730; State v. Sharp, 183 Mo. 715, 82 S.W. 134; State v. Maggard, 250 Mo. 335, 157 S.W. 354; Jones v. St. Louis-San Francisco R. Co., Mo.Sup., 253 S.W. 737; Steele v. Kansas City Southern R. Co., 302 Mo. 207, 257 S.W. 756; State v. Ashbrook, Mo.Sup., 11 S.W.2d 1037; State v. Emma, 324 Mo. 1216, 26 S.W.2d 781; State v. Simmons, Mo.Sup., 39 S.W.2d 774; State ex rel. Berberich v. Haid, 333 Mo. 1224, 64 S.W.2d 667; State v. Ransom, 340 Mo. 165, 100 S.W.2d 294;
*665 Kelly v. American Central Ins. Co., 192 Mo.App. 20, 178 S.W. 282; Smiley v. Bergmore Realty Co., 229 Mo.App. 141, 73 S.W.2d 836; Lach v. Buckner, 229 Mo.App. 1066, 86 S.W.2d 954; Hammond v. Schuermann Building & Realty Co., 352 Mo. 418, 177 S.W.2d 618; Piehler v. Kansas City Public Service Co., 360 Mo. 12, 226 S.W.2d 681.
The basis of the rule announced in the above cases seems to be that the prior consistent statement is relevant on the issue presented by the impeaching evidence, in that it logically tends to rebut the probability of the truthfulness of said impeaching evidence. This view is opposed to the weight of authority. Craig v. Craig, 5 Rawle, Pa., 91, 97; Commonwealth v. Jenkins, 10 Gray, Mass., 485, 488; Commonwealth v. Tucker, 189 Mass. 457, 76 N.E. 127, 7 L.R.A.,N.S., 1056; 3 Jones on Evidence, (4th Ed.) sec. 869, p. 1611. See note 140 A.L.R. 21. The courts that follow the majority rule base their decisions upon the theory that a self-contradiction is in no sense explained away by consistent statements, but that the discredit arising from the fact that the witness has made contradictory statements remains untouched. In other words, the evidence of prior consistent statements is not relevant to the issue raised by the impeaching evidence.
But even those courts which follow the majority rule admit the prior consistent statement when it is relevant to the issue raised by the impeaching evidence, as where the impeaching statement is coupled with a claim of recent fabrication, or evidence tending to show that at the time of giving his evidence the witness was under a strong bias, due to personal interest in the matter, or in such a situation as to put him under moral duress to testify in a particular way. In such case, it is competent to rebut the ground of impeachment and to support the credit of the witness by showing that when he was under no such bias, or when he was free from any influence or pressure, he made statements consistent with his testimony at the trial. This use of former similar statements is universally conceded to be proper. It tends to show that the testimony given is not of recent fabrication, and not influenced by subsequent events which are said to color the witness's statements at the trial. Another instance where such evidence is admitted is where the witness is discredited by showing that the facts testified to have been concealed under conditions which warrant the belief that, if true, the witness would have stated them. But, we are not here concerned with any of the above mentioned situations, and we mention the rule admitting said evidence in such cases merely to illustrate that the question involved is one of relevancy. If the statement has logical probative bearing upon the issue raised by the impeaching evidence, it is admissible; if it has not, it is inadmissible.
Where no charge of recent fabrication or bias is made in connection with the offer of the inconsistent statement, can the prior consistent statement be said to be logically relevant to the issue raised by the impeaching testimony, that is, to rebut the truthfulness of the latter? Wigmore (3rd Ed.), Vol. IV, § 1126, p. 198, in discussing the majority rule which excludes such testimony, states that it is based, in one respect, upon a fallacy, that is, that the self-contradiction is a proved fact. He says, (page 198): "But is it a proved fact that he has uttered the self-contradiction? And may not the consistency of his other statements help with the jury to controvert the testimony that he did utter the contradiction? The jury have still to determine whether they will believe the witnesses who say that he did in fact utter it; and if his consistency at other times can assist them in reaching a conclusion upon this fundamental point, it is relevant."
As supporting this proposition, Wigmore cites the opinion of Cooley, J., in Stewart v. People, 23 Mich. 63. In that case the witness denied making the contradictory statement, and the court held that the prior consistent statement was admissible. However, there is dictum in the case bearing directly upon the issue presented on this appeal, namely, can such evidence be introduced where the witness admits making the contradictory statement. On this point, Judge Cooley says, 23 Mich. at pages *666 73-74: "If it were an established fact that the witness had made the contradictory statements, we should say that the supporting evidence here offered was not admissible. If a witness has given different accounts of an affair on several different occasions, the fact that he has repeated one of these accounts oftener than the opposite one can scarcely be said to entitle it to any additional credence. A man untruthful out of court is not likely to be truthful in court; and where the contradictory statements are proved, a jury is generally justified in rejecting the testimony of the witness altogether. But in these cases the evidence of contradictory statements is not received until the witness has denied making them, so that an issue is always made between the witness sought to be impeached and the witness impeaching him. The jury, therefore, before they can determine how much the contradictory statements ought to shake the credit of the witness, are required first to find from conflicting evidence whether he made them or not; and the question we now are to decide is, whether upon an issue of this character evidence like that received by the circuit judge was admissible."
The above mentioned rule announced by Judge Cooley has been adopted in a number of decisions. Among them, Sweazey v. Valley Transport, Inc., 6 Wash.2d 324, 107 P.2d 567, 111 P.2d 1010, 140 A.L.R. 1; Parker v. State, 183 Ind. 130, 108 N.E. 517; Cincinnati Traction Co. v. Stephens, 75 Ohio 171, 79 N.E. 235; American Stores Co. v. Herman, 166 Md. 312, 171 A. 54.
The rule announced by Judge Cooley, and followed in the foregoing cases, is, in our opinion, sound. The prior consistent statement, being admissible only to rebut the truthfulness of the impeaching evidence, becomes inadmissible where the witness admits making the inconsistent statement. In such a case there is no issue to which the evidence may properly be directed. The evidence is inadmissible on the main issue being tried, because of its hearsay character. Our research has disclosed no Missouri authorities squarely in point on the issue on this appeal. While there are many cases in this jurisdiction which hold that prior consistent statements are admissible to rehabilitate an impeached witness, none of the cases deal with the precise question here presented where the contention is made that the testimony is inadmissible for the reason that the witness admits the prior inconsistent statement. In our opinion, the court erred in admitting the evidence in question.
Appellant's final assignment of error is that the verdict of the jury is excessive. Since there must be a new trial of this case due to the errors heretofore mentioned, it will not be necessary to pass upon the final point urged by appellant.
The judgment is reversed and the cause remanded for new trial.
BENNICK, P. J., and GREEN, J., concur.