ANNIE WILLIAMS, Respondent, v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Appellant, No. 43123—253 S. W. (2d) 97.

Court en Banc, November 10, 1952.

Rehearing Denied, December 8, 1952.

*Salkey & Jones* and *Carroll J. Donohue* for appellant.

*Barnhart & Wood, C. V. Barnhart* and *Marvin S. Wood* for respondent.

628

DALTON, J.—This is an action for damages for personal injuries. Plaintiff was a passenger in one of defendant's streetcars. She fell and sustained fractures of the bones of her right arm and wrist as the streetcar moved along East Hodiamont Avenue in the city of St. Louis. The cause was submitted to a jury under the res ipsa loquitur doctrine. Verdict and judgment were for plaintiff for $4950.00 and defendant took an appeal to the St. Louis Court of Appeals. That court ordered the judgment reversed and the cause remanded on the ground that the doctrine of res ipsa loquitur was not applicable under the evidence and that hearsay evidence had beeen improperly admitted. Williams v. St. Louis Public Service Co. (Mo. App.), 245 S. W. (2d) 659. The cause has been transferred to this court and we shall review the record as on original appeal. Art. V, Sec. 10, Const. of Mo. 1945.

Error is assigned (1) on the giving of Instructions 1 and 5; (2) on the admission of certain evidence; and (3) on an alleged excessive verdict. Instruction 1 submitted a finding under the res ipsa loquitur doctrine that as plaintiff was walking to the rear of the car "* * * defendant's streetcar was started in motion and that thereafter it jerked or lurched in an extraordinary and unusual manner and that as a direct result thereof plaintiff was thrown forward and to the floor of said streetcar and thereby injured, * * *."

Appellant contends the court erred in "submitting plaintiff's case under the res ipsa loquitur doctrine for the reason that the plaintiff's pleadings and evidence showed the alleged specific negligence of defendant which caused her injury and plaintiff's case should have been submitted to the jury, if at all, on such specific negligence."

The petition charged that while plaintiff was walking to the rear of the streetcar "defendant negligently caused and permitted said streetcar to suddenly check its speed and to receive an extraordinary, unusual jerk, lurch and shock whereby plaintiff was caused to be thrown to the floor thereof with much force and violence and to sustain the serious and permanent injuries * * *."

Appellant says "the plaintiff's petition did not sound in general negligence" but alleged specific negligence in permitting the streetcar "to suddenly check its speed." It is apparent that appellant has seized upon and has emphasized only a part of [99] the allegation. It has divided the sentence, ignored part of its content and failed to consider the allegation of negligence as a whole as it appears in the petition. The allegation of negligence is not limited to the operation of the streetcar or to an act of its operator. Considered as a whole the allegation sufficiently charges general negligence under the res ipsa loquitur doctrine. It sufficiently charges "an unusual occurrence with attending circumstances, the physical cause of plaintiff's injury, sufficient to justify an inference of some kind of negligence for which defendant should be held responsible, but insufficient to point to the specific negligent act or omission, the legal cause of the injury.' Boulos v. Kansas City Public Service Co., 359 Mo. 763, 223 S.W. (2d) 446, 450.

Did plaintiff's evidence disclose the specific negligence which caused her injury? Plaintiff testified: "Well, I got on the car and I paid my fare and started back to take a seat. On my way back, when the car started up and by the time I got middleways between the front door and the exit door, all of a sudden the car gave a jerk and it jerked me back and it threw me flat out on my arm like this (illustrating.) Q. Did you fall backwards or forwards? A. Forwards. * * * I just fell flat out on the floor in the aisle; I did, yes. Q. You were walking at the time that happened?

A. Yes, sir. Q. And the streetcar was in motion at that time? A. It was. Q. Is that right? A. It was. Q. You don't know what the traffic conditions were outside, or anything about that. A. No; I wasn't looking at that * * * I didn't realize my arm was broke until we had rode from where I had fell almost to Hamilton Avenue. My arm began to swell up and pain.'' She said that the streetcar had started up and proceeded about the length of a couple of automobiles, and. there was a jerk, ''just a hard jerk: throwed me out of balance, off my feet. * * * The way I noticed it it seemed to slow and give a sudden jerk.''

Plaintiff's witness, Jean Cobble, a passenger on the streetcar when plaintiff was injured, testified: ''Q. Where abouts did you sit on the streetcar? A. On the lefthand side about the center of the car. Q. Did you see anything unusual occur on that streetcar about the time it left the Horton Place stop? A. Well, I looked down and there was a colored woman—I didn't see her fall, but her arm was still in motion. I mean I saw her arm before it stopped moving. Her arm was outstretched. * * * Well, her arm was right in front of me. Q. Did you notice anything about the movement or the motion of the streetcar at about the same time? Yes, there was a slight jerk. The Court: How is that? The Witness: There was a jerk.'' On cross-examination this witness testified: '' * * * He already started up and then she paid her fare. We had started up and she put her money in her purse, and then she started to walk on back and then I looked away; * * * Q. It was after that that she fell? A. She fell just then, because I looked back in a second and she was throwed off her feet. * * * Q. Had you ever been on a streetcar that moved like that before. A. Yes. Q. Does it happen quite often on that Hodiamont streetcar line over there? A. Well, I wouldn't say quite often; occasionally, it does. * * * A. Was there anything different in the manner in which that streetcar moved on this particular day than there was on the other days you ride? A. Not especially.'' [100] On re-cross examination the witness testified: ''Q. * * * Did you tell the police officers that the streetcar jerked because you couldn't see any other reason why she fell? Was that the basis for saying that? A. No, that wasn't it exactly. I will tell you about that jerk. It wasn't like this: We were just going along and the streetcar gave a sudden jerk; * * * We were going across, what street I don't remember, and he put on the brakes—anyhow, he started slowing down for this street, because there was a car coming from the left side. He put on his brakes and he didn't totally stop, and then he went on again rather fast. Q. In other words, this jerk that you noticed took place at some intersection, is that right, an intersection with another street? A. It started, yes. * * * Q. You say that he put on the brakes and slowed the streetcar

down a little bit but did not completely stop. You say that was for an automobile. A. Yes. * * * Q. The streetcar stopped and let the automobile go on? A. He didn't stop. Q. He slowed down to let the automobile go on? A. Well, the lady goes and gets on and he starts up and then we come to this street and he sort of slows down. That was normal. And then as soon as the automobile went on he speeded up. * * * Q. * * * this movement you described of the streetcar, happens quite often? A. I wouldn't say it is exactly the same. Q. * . * * have you felt the same motion on a streetcar before or since this happened, slowing down and starting up again? A. Well, this was a little more just a little more heavy than usual; a little faster—quicker. * * * Q. One further question: I believe you said when the streetcar was slowing down at that point, then it started forward and that is when the jerk occurred? A. Yes, sir."

It is well settled that, although a petition charges general negligence, if the evidence shows the precise and specific negligence, which caused the injury, it is error to submit the case by instructions on general negligence. Williams v. St. Louis-San Francisco R. Co., 337 Mo. 667, 85 S.W.(2d) 624, 636; Belding v. St. Louis Public Service Co., En Banc, 358 Mo. 491, 215 S.W. (2d) 506, 510. Appellant insists that in this case plaintiff by her own evidence has shown the specific negligence which purportedly caused her injury. Appellant cites Berry v. Kansas City Public Service Co., 343 Mo. 474, 121 S.W. (2d) 825; Powell v. St. Joseph Ry., Lt., Heat & Power Co., 336 Mo. 1016, 81 S.W. (2d) 957; Venditti v. St. Louis Public Service Co., 360 Mo. 42, 226 S.W. (2d) 599. Appellant also cites Grimes v. Red Line Service, 337 Mo. 743, 85 S.W. (2d) 767, 769(1) and other cases where the words "if the evidence tends to prove specific negligence," are used. (Italics ours.)

It has been said: "A plaintiff can neither definitely state nor show that his injury was caused in a certain way and then allow the jury to speculate on whether it was caused in some other way." Sanders v. City of Carthage, 330 Mo. 844, 51 S.W. (2d) 529, 531; Berry v. Kansas City Public Service Co., 343 Mo. 474, 121 S.W. (2d) 825, 830. "When * * * the plaintiff pleads general negligence and by the pleading invokes the aid of the res ipsa loquitur doctrine, he does not lose or waive the benefit thereof, and the right to rely thereon in the submission of the case to the jury, by introducing evidence to show specifically the cause of the accident if by the evidence the cause is still left and remains in doubt or is not clearly shown, but where the real or precise cause is definitely shown, and is not left in doubt, 'there is no occasion or room for the' presumption or inference which [101] the res ipsa rule affords. 'The plaintiff is bound by his evidence in a res ipsa case just as he would be in any ordinary

negligence action and cannot in effect say to the jury, "I have shown you exactly how the accident occurred but you are, nevertheless, still at liberty to speculate and presume it may have happened some other way." ' Conduitt v. Trenton Gas & Electric Co., 326 Mo. 133, 31 S.W. (2d) 21, 25, and cases there collected and cited." Powell v. St. Joseph Ry., Lt., Heat & Power Co., 336 Mo. 1016, 81 S.W. (2d) 957, 960; Whitaker v. Pitcairn, 351 Mo. 848, 174 S.W. (2d) 163, 168; Belding v. St. Louis Public Service Co., supra.

In the light of these decisions we must examine the testimony of plaintiff and her witness Jean Cobble. Appellant relies entirely upon the testimony of Jean Cobble as having "very definitely and certainly * * * fixed the exact and precise cause of plaintiff's alleged injury." Appellant argues that, "It is basic that 'res ipsa loquitur' is not available to a plaintiff who, by her own pleadings or evidence, shows precisely and exactly what negligence of defendant was the cause of her injury." Appellant also says that Mrs. Cobble's testimony with reference to the "use of the brakes and the acceleration * * * clearly describes specific negligence, *if it describes any negligence at all.*" (Italics ours.) Appellant asks a reversal and remand so that "a proper jury submission predicated on the specific negligence, *if any,* shown by plaintiff's testimony may be made." (Italics ours.) It will be seen that appellant does not say that any designated specific negligence of defendant was definitely shown. The suggestion is that no specific negligence was shown. The criticism in Rothweiler v. St. Louis Public Service Co., 361 Mo. 259, 234 S.W. (2d) 552, 554, is, therefore, applicable where this court said: "The carrier will not be heard to say plaintiff's case was 'devoid of evidence of specific negligence on the part of this defendant,' and then insist, as its brief does, that the case should have been submitted as to it, if at all, as a specific negligence case."

A careful review of Mrs. Cobble's testimony indicates that the streetcar in question was slowed to permit an automobile to pass across in front of it; that then the streetcar started forward; and that that was when the jerk occurred. She said that after the slowup "he went on again rather fast * * * he speeded up. * * * this was a little more, just a little more heavy than usual; a little faster—quicker", but she did not say what caused the jerk or that the operator caused it, nor did she say that the speeding up of the streetcar was the jerk, or caused the jerk that threw the plaintiff to the floor and injured her. Even if it be conceded that an inference could be drawn from the evidence that the jerk was due to the application of power to the transmission system, the evidence did not show whether the jerk was caused by a negligent application of the power or to a negligently maintained transmission system. See, McCaffery v. St. Louis Public Service Co., No. 42,737, 363 Mo.

545, 252 S.W. (2d) 361. Mrs. Cobble's testimony did not limit the cause to either operation or maintenance. The facts testified to by the witness went no further than to afford an equal basis for inconsistent conclusions. Viewing Mrs. Cobble's testimony, sentence by sentence, and as a whole and further recognizing the fact that plaintiff's own personal testimony did not associate the jerk with any act of the operator, we hold that no specific negligence on defendant's part causing the jerk was definitely shown. Semler v. Kansas City Public Service Co., 355 Mo. 388, 196 S.W. (2d) 197, 200; Boulos v. Kansas City Public Service Co., supra, 223 S.W. (2d) 446, 450; McCaffery v. St. Louis Public Service Co., supra; Mueller v. St. Louis Public Service Co., 358 Mo. 247, 214 S.W. (2d) 1, 2. It remained for the jury, if it so found, to infer that the jerk was caused by some negligence of defendant in operation or in maintenance.

■ Appellant further argues that if the evidence would support a verdict for plaintiff based upon any specific negligence *which could be inferred* from the plaintiff's evidence without the aid of the res ipsa [102] loquitur doctrine, the cause cannot be submitted upon general negligence under such doctrine. Appellant insists that, if the evidence is sufficient to make out a submissible issue or prima facie case as to any specific negligence of the defendant which may have been the proximate cause of his injury, the cause may not be submitted under the res ipsa loquitur doctrine. Such is not the rule in this state. The applicable rule appears from the cases above cited. The pleadings and evidence may be such that a cause may be submitted on either general or specific negligence at plaintiff's election. Submission under the res ipsa loquitur doctrine may not be denied, unless specific negligence, the real or precise cause is definitely shown by direct evidence. Anything that may have been said in Venditti v. St. Louis Public Service Co., 360 Mo. 42, 226 S.W. (2d) 599, 603; or in Hill v. St. Louis Public Service Co., 359 Mo. 220, 221 S.W. (2d) 130, 133, indicating the contrary was unnecessary to the decision in said cases and should not be followed.

■ Appellant assigns error on the giving of plaintiff's instruction No. 5, as follows: "The Court instructs the jury that if you find from the credible evidence the facts to be as submitted to you in Instruction Number 1, then plaintiff has met and carried the burden of proof required of her under the law and the instruction herein."

Instruction No. 1, was plaintiff's principal instruction submitting the cause under the res ipsa loquitur doctrine. Appellant makes no complaint of it, except to insist, as hereinbefore stated, that specific negligence was proven. Defendant asked and obtained Instruction No. 4, which advised the jury that "the burden of proof is on plaintiff to show by the greater weight of the credible evidence that defendant was negligent and that plaintiff's injuries, if any, were the

direct result of the negligence of the defendant. You should not find that the defendant was negligent from the mere fact of the occurrence shown by the plaintiff's evidence, if you find and believe from all the evidence in the case that the defendant was not negligent, and if you do find and believe from all the evidence in the case that the defendant was not negligent, then your verdict should be in favor of the defendant.''

Appellant says that ''said Instruction (No. 5) lessened and improperly described the burden of the proof, invaded the province of the jury, improperly directed the verdict for plaintiff and was inconsistent with and destructive of Instruction No. 1 under which the cause was submitted to the jury under the doctrine of res ipsa loquitur.'' Appellant further argues that, ''By instructing the jury that the plaintiff had sufficiently carried her burden by proof of the naked facts of the unusual occurrence, this instruction made defendant the insurer of the safety of plaintiff, substantially reduced plaintiff's true burden which is that of proving defendant to be negligent, invaded the province of the jury, directed a verdict for plaintiff on an inadequate basis and emasculated the doctrine of res ipsa loquitur by eliminating therefrom the need of the jury's inferring defendant's negligence from proof of the unusual occurrence.''

Appellant's position is based upon a false premise and wholly ignores the fact that Instruction No. 1 required an affirmative finding of a further fact, to wit, the ultimate fact of negligence, as follows: '' * * * and if you so find, and believe from all the facts and circumstances in evidence, that defendant was negligent and that plaintiff's injuries, if any, were directly caused by defendant's negligence, then your verdict should be in favor of plaintiff and against the defendant, St. Louis Public Service Company, a corporation.'' Further, in the case of Venditti v. St. Louis Public Service Co., 362 Mo. 339, 240 S.W. (2d) 921, 925, an instruction practically identical with Instruction No. 5 was held proper as against an attack on the same grounds as is here urged against Instruction No. 5. We need not repeat what was there said. The assignment is overruled.

Appellant further contends that ''the court erred in permitting plaintiff to present hearsay evidence by way of a police officer's testimony that, following the accident, witness Cobble stated to him that the streetcar gave a sudden jerk at the time of the accident.''

After witness Cobble had testified with reference to the circumstances attending the receipt of plaintiff's injuries as hereinbefore set out, on cross-examination she was asked about and admitted having given a written statement (referred to as a ques-

tionnaire or witness card) to defendant some week. or ten days subsequent to the time plaintiff was injured  The card stated that at the time plaintiff fell the witness had noticed nothing unusual in the movement of the streetcar.  The witness further testified that she was under oath and was telling the truth at the trial, but that in the statement she didn't state the truth, and that she had made the written statement to defendant because she "didn't want to be dragged down here."  Thereafter, plaintiff was permitted to show by a police officer, who had investigated the matter *on the day* plaintiff was injured, that Mrs. Cobble had stated to him at that time that "about the time of the accident the car did give a sudden jerk." The record is reviewed more fully in Williams v. St. Louis Public Service Co. (Mo. App.), 245 S.W. (2d) 659, 663.

The circumstances attending the admission of this evidence are particularly important.  After the preliminary facts were fully shown, the following appears from the record of the police officer's testimony, as plaintiff sought to rehabilitate witness Cobble: "Q.  *  *  *  I will ask you to tell the court and jury what statement, if any, she made to you in regard to the movement of the streetcar in question.  Mr. Gaertner: I will object to that, your Honor.. In the first place, it is hearsay.  In the second place—well, it is hearsay; that's all.  I object to it for the reason it is hearsay.  The witness has already testified to that. The Court: It is objected to on the ground it is hearsay.  Mr. Barnhart: I have a case in point, if the court please. (Thereupon, the following proceedings were had outside the hearing of the jury.) Mr. Barnhart: After a witness has been impeached by a prior inconsistent statement—Mr. Gaertner has done that—it is proper to introduce a consistent statement.  Piehler versus Kansas City Public Service Co., 226 S.W. (2d) 681.  Mr. Gaertner: Your Honor, *it is my understanding you can introduce a prior consistent statement, but there is no evidence this witness said anything prior to the questionnaire.* It is exactly the same thing she said in that questionnaire.  Mr. Barnhart: It is prior to the statement several days later.  Mr. Gaertner: I think that witness card is the .first statement. *There is no evidence what she said to the officer is prior to the witness card in which she said there was no unusual motion of the streetcar.*  Mr. Barnhart: Let's say she has been impeached by one statement.  The statement here made to the officer is certainly prior to that one.  I have a right to introduce it on the basis of Piehler versus Kansas City Public Service Company.  The Court: I will overrule the objection.  Mr. Gaertner: Save an exception."  (Italics ours.)

Appellant's motion for a new trial assigned the same ground for error in the admission of this evidence, as follows: "*  *  * in permitting witness, patrolman Ficke, to testify to the statement made to him by witness Cobble to the effect that the streetcar jerked, inasmuch as there was no proof that this statement was made prior to the incon-

sistent statement of witness Cobble that there was no unusual movement on the streetcar, * * * ." It clearly appears from plaintiff's evidence that the written statement or questionnaire card (the impeaching and inconsistent statement) was filled out in Mrs. Cobble's handwriting "about a week or ten days" after plaintiff was injured; and that the prior consistent statement by Mrs. Cobble to the police officer was made right after plaintiff was injured, on the same day.

Appellant now argues that the prior consistent statement of Mrs. Cobble, as testified [104] to by police officer Ficke, "was hearsay testimony and did not constitute competent, relevant or material evidence with respect to the issues in this case," because witness Cobble "freely admitted and explained that she had deliberately lied in making her written statement" and she "could not be rehabilitated by the showing of the prior consistent statement." Appellant says "the rehabilitation rule cannot apply to the testimony involved herein" because the witness confessed the contradicting statement and fully explained the inconsistency. Appellant's position is more fully stated in the opinion of the St. Louis Court of Appeals. Williams v. St. Louis Public Service Co. (Mo. App.), 245 S.W. (2d) 659, 663, et seq.

It is a well settled principle of law, long established and applied in many cases, that parties will be bound on appeal by the positions they have taken in the trial court. Moffett v. Butler Mfg. Co. (Mo. Sup.), 46 S.W. (2d) 869, 871(3); Queen City Furniture & Carpet Co. v. Crawford, 127 Mo. 356, 368, 30 S.W. 163; Long v. Long, 141 Mo. 352, 367, 44 S.W. 341. "Cases must be submitted and considered on the same theory upon which they were tried below. We will not review a case upon a theory different from that upon which it was tried in the circuit court. Litigants are not permitted to blow both hot and cold in the same case, even in different courts." Smithpeter v. Wabash R. Co., 360 Mo. 835, 231 S.W. (2d) 135, 146, and cases cited. It is clear from this record that, although a general objection was made to the introduction of the questioned evidence on the ground that it was hearsay, the general objection was followed by a specific objection as to why the hearsay testimony was inadmissible, and it was in effect admitted by defendant's counsel that the questioned evidence was admissible, unless excluded on the basis of the specific objection. A ruling was *clearly invited* upon the basis of the specific objection and now that such specific objection appears untenable appellant may not complain on appeal on the basis of a specific objection not presented to nor ruled upon by the trial court. The error, if any, was invited. Heagy v. Miller (Mo. Sup.), 187 S.W. 889, 891(8); Reynolds v. Maryland Casualty Co., 274 Mo. 83, 201 S.W. 1128, 1134. A rule of evidence not invoked is waived. DeMoulin v. Roetheli, 354 Mo. 425, 189 S.W. (2d) 562, 565; Goodman v. Allen Cab Co., 360 Mo. 1094, 232 S.W. (2d) 535, 539. We express no opinion on the issue sought to be presented. The assignment is overruled.

■ Appellant contends that the verdict for plaintiff in the sum of $4950.00 "is grossly and disproportionately excessive"; that it "indicates passion, bias and prejudice on the part of the jury against defendant"; and that a substantial remittitur should be required. On this issue, we must consider the evidence favorable to the verdict of the jury as the verdict has had the approval of the trial court.

Plaintiff was a woman forty-four years of age. She had been employed at the Midwest Laundry in St. Louis for some fifteen years prior to the time she was injured. As a result of her fall, she had her arm in a cast for eight weeks, she was absent from work for approximately fourteen weeks and she lost some $350.00 in wages. The record shows that she sustained a complete transverse fracture of the ulna and a complete, oblique, comminuted and impacted fracture of the radius of the right arm at the wrist joint. The radius is "the large bone of the lower forearm, which goes into and helps to make up the wrist joint." The impaction of the fragments of the radius has resulted in an approximate one-half inch shortening of that bone. This has permanently altered the normal angulation of the radius with the corpal bones of the wrist. There is now a permanent mechanical fault, which restricts the motion of the right wrist as to rotation and flexion. The limitations with respect to rotation and flexion are of a permanent nature and will not improve. There is also a slight deformity of the ulna in that there is a tilting dorsalward. Although the fracture of the radius was well united at the time of trial, a complete bone union of the parts of the ulna had not been achieved. The parts of the ulna are held in place only by a fibrous union. The deformity of the wrist and the stiffness of the joint will cause pain for an [105] indefinite time in the future. There has been a loss of strength in the right hand and some atrophy of the muscles of the right wrist and arm, with a permanent 40 to 50 per cent functional loss of use of the right wrist. If plaintiff does heavy lifting or handwork, her wrist pains and swells. She had had a prior fracture of her right arm, some four years prior to the receipt of the injuries in question here, and there was some permanent dislocation, but she testified that she could use her arm as well after this first injury had healed as she could before the injury was sustained.

Respondent relies upon the opinion of the St. Louis Court of Appeals in Hughes v. St. Louis National League Baseball Club (Mo. App.), 218 S.W. (2d) 632, 640, although that case was subsequently transferred to the Supreme Court and disposed of without ruling the issue of an excessive verdict. 359 Mo. 993, 224 S.W. (2d) 989. There the plaintiff was a much older woman and the injuries less severe than in this case and a verdict for $7500 was ordered reduced to $5000. Appellant cites Harding v. Kansas City Public Service Co. (Mo. App.), 188 S.W. (2d) 60; Kulengowski v. Withington (Mo. App.), 222 S.W. (2d) 579; Roberts v. Carter (Mo. App.), 234 S. W. (2d) 324; Erxleben

v. Kaster (Mo. App.), 21 S. W. (2d) 195. These cases do not involve similar injuries.

Every case involving the issue of an excessive verdict must be ruled upon its own peculiar facts. The evidence in this record favorable to plaintiff is adequate to sustain a verdict in the amount fixed by the jury.

Finding no reversible error in the record, the judgment must be affirmed. It is so ordered.

All the judges concur except *Ellison, C. J.*, who dissents in separate opinion filed.

ELLISON, C. J. (dissenting).—I dissent. The plaintiff-respondent's petition alleged she was walking down the streetcar aisle when the ''defendant'' negligently caused and permitted said streetcar to suddenly check its speed and to receive an extraordinary, unusual jerk, lurch and shock and threw her to the floor and injured her. She testified it did not stop and that when the car started up all of a sudden it gave a jerk and threw her to the floor. Her witness Cobble, another passenger, testified there was a jerk; ''he'' [evidently the motorman] had already started up and then the respondent paid her fare. Just then she fell. The movement was not unusual. It occasionally happens on that streetcar line. There was nothing especially different in the movement of the streetcar on that particular day as compared with other times when she, the witness, was a passenger. Continuing she said ''he put on the brakes—anyhow he started slowing down for a cross street because there was a car coming from the left side. He put on his brakes and he didn't totally stop, and then he went on again rather fast.''

The principal opinion states the respondent ''did not say what caused the jerk, or that the operator caused it,'' and that even if it be inferred that the jerk was due to the application of electric power to the emergency brakes, the evidence still does not show whether that resulted from a negligent application of the power, or to a negligently maintained transmission system. On that point McCaffery v. St. Louis Public Service Co., No. 42,737, 363 Mo. 545, 252 SW (2d) 361. In that case, somewhat similar in its facts, there was a question as to whether the sudden stopping of a streetcar was caused by improper manipulation of the brakes, or by improper functioning due to faulty maintenance thereof. There is no such evidence in this case. The motorman here applied the brakes and slowed down but did not stop, because an automobile was approaching on a cross street. When it passed he released the brakes and speeded up. In my opinion the instant case counts on specific negligence in the motorman's operation of the streetcar. It was not a res ipsa loquitur case.