LINDA EDNA MYERS, A MINOR BY HER NEXT FRIEND, LUCY MYERS, RESPONDENT v. KATHERYNE MOORE, DOING BUSINESS AS MOTHER GOOSE NURSERY, APPELLANT.—217 S. W. (2d) 291.

Kansas City Court of Appeals. Opinion delivered January 10, 1949.

*R. Carter Tucker, John Murphy, Wm. H. Wilson, J. Gordon Siddens* and *C. Thomas Carr* for appellant.

*Richard H. Beeson, David P. Dabbs* and *Dean F. Arnold* for respondent.

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $5000 and defendant has appealed. The facts show that defendant operates a business known as Mother Goose Nursery in Kansas City, and holds herself out as qualified and equipped for the care of infant children.

Lucy Kitchen, whose name was Lucy Myers at the time of the filing of the petition herein, testified that she was the mother of plaintiff; that about three p. m., on September 5, 1946, she took plaintiff, then about five weeks of age, to defendant's nursery, and after paying five dollars for one half week's care of the child she left to go to work. The witness made inquiry of the defendant concerning defendant's facilities for taking care of a child of the age of five weeks. Defendant told her, among other things, that "there was someone there with them (the children) all night." The next morning about eight o'clock, when the witness arrived at the nursery she was met by the nurse who took her to her daughter who was in a crib. The witness noticed a mass of blood around the child's feet. Her gown and the sheet were bloody and plaintiff's left hand was bleeding, but she saw no cut on plaintiff's face. Defendant then appeared and informed the witness that she did not know what had happened or how it could have happened. The witness left and returned to the nursery about two p.m. At that time plaintiff had, bandages on her arms, hands, feet, legs and body; there were marks on plaintiff's face and "her body seemed to be swollen twice her size." Later in the afternoon the witness called Dr. Glasscock and asked him to see the plaintiff. The doctor saw plaintiff and recommended that she be taken to the hospital. The witness left her work about six-thirty, arrived at the nursery and took plaintiff to St. Luke's Hospital. Plaintiff remained there until September 22, when the witness took her home. Plaintiff now is nervous, has scars on the bottom of her feet, on her right ankle, on the small finger of her left hand, and in between her eyes. At the time of the accident the witness had left plaintiff in charge of defendant and had no charge or control over plaintiff during the time plaintiff was at the nursery, nor did she know how plaintiff received the injuries. The witness further testified that plaintiff was a normal baby and there was nothing the matter with her when she was left with defendant.

Dr. Glasscock testified that he saw plaintiff at St. Luke's Hospital on September 6, 1946. In answer to a question concerning the condition of the child when he saw her, he answered: "She had re-

ceived several bites particularly on the extremities and particularly on the left foot. The two small toes on the left foot were lacerated, swollen and dark in color with some redness and swelling of the entire foot. There were a few evident bites on the legs and arms and several on the hand and on the other foot." He further testified that the child was anemic on account of the low red blood cell count. He further testified that he did not believe he could say definitely what caused the various lacerations on the child; that he saw two or three scratches on plaintiff's face. "The little toe on the left foot had apparently been chewed upon and the distal portion or part of it was gone when I saw the baby and on the 10th of September—on the 12th of September, the distal part of the little toe came off * * * sloughed off at that time."

Dr. Feierabend testified that he examined plaintiff on January 6, 1947 and again on November 14, 1947; that he found numerous red scars on her feet, legs, arms, hands and face; that the left little toe had been almost completely amputated.

Over the objection of defendant, plaintiff introduced the hospital records of plaintiff. Under date of September 7, 1946, the records show the following: "Two small toes on left foot are lacerated, swollen and dark in color with some redness and swelling of entire foot. There are a few bites on the legs and arms and several on the hands and other foot." Under date of September 10, 1946, the records show: "General condition good. All lesions healing nicely except for distal part of little toe on left foot, this remains black. Definite anemia present." Under date of September 14, 1946, the records show: "50 co citrated blood given into scalp vein. Distal part of little toe came off last night." The hospital records further recite the following: "The planter surfaces of both feet are covered with multiple abraded small $\frac{1}{2}$ milimeter maxillar areas. The lesions are confluent making the planter surface raw. The 4th, 5th left toes very much abraded, the 5th toe being almost completely macerated. There are many single lesions on the hands, forearms and legs. Head and neck negative." * * * . "There are many single lesions on the hands, forearms and legs. These areas look like bites of some kind. Head and neck negative." * * * "P. D. Multiple abrasions of skin due to animal bites." The notations in the hospital records were signed by a physician other than Drs. Glasscock and Feierabend.

At the close of plaintiff's evidence, defendant offered an instruction for a directed verdict which the court refused.

Defendant introduced no testimony, but we find the following facts disclosed by defendant's opening statement to the jury: That during the night of September 5 and 6, 1946, plaintiff was in a wooden crib next to the wall in a part of the nursery used for the youngest children; that a night attendant changed the child's diaper and

gave her a feeding about 2:00 a.m. and left her sleeping comfortably in the crib. that at 6:00 a.m., when the night attendant next returned, after taking a nap, she lifted the blanket covering the child and found blood on the sheet and on the child's left foot. Further examination disclosed a wound on the little toe, and "they knew (defendant and the nurse) that the child had been wounded in some way."

The petition alleges that plaintiff's mother left her in the care and custody of the defendant and paid defendant five dollars to take care of plaintiff for one half week; that because of the negligence of the defendant, plaintiff suffered severe and permanent injuries in that her face was cut and lacerated, her nose was cut, her fingers were cut and lacerated, the small toe on her left foot was gnawed or torn off, and the toe next to the small toe on her left foot was gnawed, cut and lacerated; that the defendant had the sole care and custody of plaintiff during the time in question, and plaintiff had no control over her surroundings; that the exact cause of her injuries are unknown to plaintiff, but are known to defendant. The petition did not allege any specific act of negligence on the part of defendant.

It is insisted by the defendant that the court erred in overruling her motion for a directed verdict for the reason that the petition fails to state facts sufficient to constitute a claim for relief against the defendant (a matter called to the court's attention by defendant's motion to dismiss filed before the trial of the case); and that the evidence fails to establish a case under the *res ipsa loquitur* doctrine. In this connection defendant says that the petition, stripped of its allegations constituting mere legal conclusions alleges merely that plaintiff's mother left her in the care and custody of defendant and that while plaintiff was in such custody she suffered injuries; that even if this were a case for the application of the *res ipsa loquitur* doctrine, the petition states no cause of action under that doctrine for the reason that it alleges no act on the part of defendant as being the proximate cause of the casualty or event complained of, and at the same time characterizes that act as being negligent in general terms.

When a plaintiff relies upon the *res ipsa loquitur* doctrine, it is necessary for him to prove an occurrence or physical cause in addition to his injuries. "In general and on principle the doctrine *res ipsa loquitur* does not apply except when (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence." (McCloskey v. Koplar, 46 S. W. (2nd) 557, 559. Charlton v. Lovelace, 173 S. W. (2nd) 13; Davidson Orpheum Corporation, 161 S. W. (2nd) 707; Semler v. Kansas City Public

Service Co., 196 S. W. (2nd) 197; Belding v. St. Louis Public Service Co., 205 S. W. (2nd) 866.)

The evidence in this case, we think meets the requirements of (a) and (c) mentioned in the McCloskey case. The defendant held herself out as a competent person to operate a nursery for small children and to care for them properly. Under all of the circumstances an injury, such as received by plaintiff, does not ordinarily happen if those in charge of the child use due care. Defendant also possessed superior knowledge or means of information as to the cause of the occurrence. In this case, plaintiff was an infant of such tender years that it could have had no conception of what happened to it.

If plaintiff's evidence falls short of establishing the necessary elements mentioned in the McCloskey case it is that covered by clause (b), which requires the instrumentalities involved to be under the management and control of the defendant. Defendant contends that there is no proof of what these instrumentalities were, and that the hospital records were incompetent to prove that the wounds were caused by an animal bite or bites for the reason that in this particular they state merely a conclusion.

Without deciding whether if the hospital records do state conclusions they are incompetent, we are of the opinion that these records did not state such conclusions (in the sense that the word is ordinarily used) and we, therefore, assume that plaintiff's injuries were due to animal bites. (Jerome v. United Rys. Co., 155·Mo. App. 202.) There was considerable talk at the trial that the animal involved was a rat, but the evidence discloses nothing further than that it was an animal. Defendant contends that even though it were an animal, there is no evidence that she had any management or control over it. This may be true, but there can be little question as to what defendant's negligence consisted of in this case. Defendant owned, controlled and operated the premises and nursery; they were under her exclusive management and control, and the animal could not have had access to the plaintiff if the premises had been properly maintained and operated.

The petition does not allege acts showing that the instrumentalities involved were under the management and control of defendant, but in this case we are of the opinion that such matter was not necessary to be either pleaded or proved. None of the cases cited involved the sole custody and control of an infant of tender years by defendant, or in fact the custody of any person. We have been unable to find any case where the facts were like those in the case at bar. However, we think there are some things said and held in Ybarra v. Spangard, 154 Pac. (2nd) Calif. 687, that have application here. In that case plaintiff, while under an anesthetic for an appendectomy, received an injury to his right arm. He was unconscious and did not know what caused the injury. The court held that the

facts of the case brought it within the *res ipsa loquitur* doctrine and stated in that connection, l. c. 689: There is a "tendency in some decisions, to lay undue emphasis on the limitations of the doctrine, and to give too little attention to its basic underlying purpose. The result has been that a simple, understandable rule of circumstantial evidence, with a sound background of common sense and human experience, has occasionally been transformed into a rigid legal formula, which arbitrarily precludes its application in many cases where it is most important that it should be applied. 'If the doctrine is to continue to serve a useful purpose, we should not forget that 'the particular force and justice of the rule, regarded as a presumption throwing upon the party charged the duty of producing evidence, consists in the circumstances that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to him but inaccessible to the injured person'." The facts in that case showed that there were several instrumentalities involved in the operation, all of which were under the control of defendants. However, defendants insisted that plaintiff had not identified the particular instrumentality involved. In this connection, the court said: "Here, again, there is a misconception which, if carried to the extreme for which defendants contend, would unreasonably limit the application of the *res ipsa loquitur* rule. It should be enough that the plaintiff can show an injury resulting from an external force applied while he lay unconscious in the hospital; that is as clear a case of identification of the instrumentality as the plaintiff may ever be able to make."

In the case at bar the facts bespeak negligence on the part of defendant in no uncertain terms. It involves an infant, who could not have known what occurred, being placed in the hands of defendant who held herself out as a person skilled in the care of children, and receiving injuries of a most unusual character and under circumstances that no one could have any knowledge of unless it be the defendant. Every consideration of reason and justice required defendant to come forward with some explanation of the occurrence.

We think the facts in this case distinguish it from those cases cited by defendant. The facts are comparable in many respects to those in bailment cases. It is held in such cases, where negligence is alleged, that "a prima facie case which meets the bailor's burden in an action to recover for injuries to the thing bailed while in the bailee's possession is made out, according to the weight of modern authority, by proof that the property was delivered in bailment to the defendant in good condition and was returned to him injured, at least where the injury is one which does not ordinarily occur in the exercise of the degree of care incumbent on the particular bailee. The jury may legitimately draw an inference of improper care from such evidence, and it is generally held, in actions based on negligence, that a presump-

tion that the injury resulted from the bailee's negligence arises. The rule rests upon the consideration that where the bailee has exclusive possession, the facts attending the injury must be peculiarly within his own knowledge.'' (6 Am. Jur. pp. 450, 451.) ''Where goods have been committed to a bailee, and have either been lost or been returned in a damaged condition, and the bailee's liability depends upon his negligence, the fact of negligence may be presumed, placing on the bailee at least the duty of producing evidence of some other cause of loss or injury.'' (Wigmore on Evidence, 3rd Ed., p. 375.) Where plaintiff's case is grounded upon the negligence of the bailee, and he shows delivery of goods to bailee in good condition and return to plaintiff in an injured condition, the court will apply the doctrine of *res ipsa loquitur* or the theory of presumptive negligence. ''Since the bailor is generally at a disadvantage in obtaining accurate information of the cause of the loss or damage the law considers he makes out a case for the application of the rule of *res ipsa loquitur* by proof of the bailment and the failure of the bailee to deliver the property on proper demand. (Levi v. Railroad, 157 Mo. App. 1. c. 543, and cases cited.) With the prima facie case conceded, the burden devolved on defendant to excuse its failure to deliver the property by proof that the loss was due to a cause consistent with the exercise of reasonable care.'' (W. D. Corbin v. Gentry & Forsythe Cleaning and Dyeing Company, 181 Mo. App. 151, 155.).

We are of the opinion that the petition herein states a cause of action and that the court properly overruled defendant's motion for a directed verdict. We have examined Charlton v. Lovelace, et al., 173 S. W. (2nd) 13, Cunningham v. Neil House Hotel Co., 33 N. E. (2nd) Ohio, 859, and like cases cited by defendant and find them of no aid to her.

The judgment is affirmed. All concur.