**James RIBOVICH, Plaintiff,**

**v.**

**ANHEUSER BUSCH, INC., et al., Defendants.**

**No. 95–2108–CIV–T–17.**

United States District Court, M.D. Florida, Tampa Division.

July 14, 1997.

Peter M. Commette, Peter M. Commette, P.A., Fort Lauderdale, FL, for Plaintiff.

Bradley Edward Powers, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, J. Richard Caldwell, Jr., Rumberger, Kirk & Caldwell, P.A., Tampa, FL, for Defendants.

### *ORDER DENYING MOTION FOR SUMMARY JUDGMENT*

KOVACHEVICH, District Judge.

The cause is before the Court on defendants' motion for summary judgment, filed January 15. 1997 (Docket No. 50), and response thereto, filed May 8, 1997 (Docket No. 63).

### *BACKGROUND*

This action was commenced on December 20, 1995, by the filing of a complaint in diversity against Anheuser Busch, Inc. and Anheuser Busch Companies, Inc. (hereafter the Busch Corporations). The complaint alleged only one cause of action: negligence, incident to the plaintiff being injured on the defendants' property (Docket No. 1). The complaint alleges that the injury to the plaintiff was caused by the defendants' negligence, including but not limited to:

1) failure to use reasonable care to provide and maintain a safe place to load and unload trucks;

2) failure to promulgate and enforce reasonable rules and regulations to insure the safety and health of business invitees, including the plaintiff;

3) failing to properly supervise the work area;

4) failure to apprehend a dangerous, recognizable hazard in the work area by defendants' personnel;

5) failure to properly plan for the work the plaintiff was to perform;

6) failure to post a lookout;

7) failure to have a safe procedure in effect so that the plaintiff could operate safely at defendants' facility;

8) failure to discover the dangerous condition;

9) failure to provide adequate instruction and supervision to their employees so as to protect plaintiff and other business invitees;

10) failure to follow sound management practices with the goal of providing invitees, such as plaintiff, a safe place to load or unload trucks; and/or,

11) failure to understand the hazards to plaintiff and then to take necessary step to eliminate or minimize the hazards or to warn the plaintiff of the danger from the hazards.

The factual allegations of the complaint are as follows: On May 10, 1995, while driving a truck on behalf of M.D. Transport Systems (hereafter M.D. Transport), the plaintiff made a delivery to the Anheuser Busch Brewery in St. Louis Missouri, which is owned and/or operated by one or both of the Busch Corporations. After unloading the beer kegs he was delivering, the plaintiff moved his truck forward from the loading bay, then got out to close the truck's doors. While closing the doors, a broken overhead light which was dangling from its conduit was dislodged and fell on the plaintiff's head. The impact of the falling light cut plaintiff's head, requiring eight (8) stitches, and knocked him to the ground. The plaintiff suffered brain damage with functional impairment, associated pain and losses, including but not limited to:

> [S]evere headaches, dizziness, vertigo, permanent memory loss, depression, blurred vision, perpetually stiff and painful neck, fatigue, limited night vision, loss of concentration and organizing ability, a ringing in his ears, lost wages, impairment to working ability, and medical expenses.

The complaint asserts that the injuries sustained are either permanent or continuing in nature.

### *STANDARD OF REVIEW*

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National*

*Bank of Mt. Pleasant,* 595 F.2d 994, 996–7 (5th Cir.1979), quoting *Gross v. Southern Railroad Co.,* 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

> In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

The Court also said, "Rule 56(e) therefore requires that nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at p. 324, 106 S.Ct. at p. 2553, 91 L.Ed.2d at p. 274. As the district court in *Coghlan v. H.J. Heinz Co.,* 851 F.Supp. 808 (N.D.Tex.1994), summarized:

> Although a court must "review the facts drawing all inferences most favorable to the party opposing the motion," ... the nonmovant may not rest on mere allegations or denials in its pleadings; in short, "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). However, merely colorable evidence or evidence not significantly probative will not defeat a properly supported summary judgment ... the existence of a mere scintilla of evidence will not suffice ... (cites omitted) at 810–811.

## *DISCUSSION*

### ASSERTIONS OF THE MOTION FOR SUMMARY JUDGMENT

### A. THERE IS NO RECORD EVIDENCE THAT THE PLAINTIFF WAS INJURED AT THE ANHEUSER BUSCH ST. LOUIS, MISSOURI BREWERY

The defendants jointly seek to have summary judgment entered in this action, which the plaintiff vigorously opposes. The initial basis set forth in support of the motion is the defendants' claim that there is no record evidence that the plaintiff was injured at the Anheuser Busch St. Louis, Missouri Brewery (hereafter the brewery). The defendants allege that the plaintiff has mere speculation to support his claim that a light fixture fell on his head at the brewery. The following summarizes the evidence submitted in support and/or opposition to this issue:

1. The plaintiff picked up a load of beer kegs at the Anheuser Busch Brewery in Jacksonville, Florida, which he drove to St. Louis, Missouri, arriving there during the daytime hours of May 10, 1995. He was driving a standard height trailer, from 13'4" to 13'6".

2. Initially, he was required to stop at the guard shack to give them the bill of lading and his appointment time and to receive a card with the door number for unloading (Plaintiff (hereafter Pl.) Deposition (hereafter Depo.) pages (hereafter pgs.) 29, 38–39). Truckers then were to wait in a "holding" area until their number was called over the CB radio; the plaintiff waited approximately thirty (30) minutes that day to be called to Door 57 (Pl. Depo. pgs. 38, 40 & 43).

3. After a delay, the plaintiff's truck was unloaded by the forklift operator, while the plaintiff observed, and the bills of lading were signed; it was still daylight at this time and appears to have been between about 4:13 and about 4:25 p.m. (Pl. Depo. pgs. 51, 56–57 & 61, Exhibit [hereafter Ex.] 8 to Ducote Depo.). He returned to his truck and pulled it forward about six (6) feet (Pl.Dep.pg.62), then left the cab of the truck to shut the trailer doors. When he walked around to shut the door on the passenger side of the truck he heard glass break (Pl.Depo.pg.61).

4. At this point, the plaintiff's memory suffers. He believes he was hit on the head by a "light" (Pl.Depo.pg.65). He doesn't remember driving away from the brewery but has a vague recollection of encountering a "Department of Transportation (DOT)" employee outside the brewery property; he was

stopped and inquiries were made about his load (Pl.Depo.pgs.67–70). When he got out of the truck, his hat fell off and there was blood over the whole side of his head (Pl. Depo.pg.70).

5. In fact, the plaintiff was stopped by Officer Michael Walsh, St. Louis Police Department, Traffic Safety–Motor Carriers Safety Assistance Program, at 4:25 p.m. on May 10, 1995, about two (2) or three (3) blocks from the brewery (Walsh Depo. pgs. 5–7). When the plaintiff took off his baseball cap, there were handkerchiefs underneath that were bloody and, when the plaintiff asked how bad the injury was, Mr. Walsh suggested the plaintiff go to a clinic (Walsh Depo. pgs. 9 & 13). However, the plaintiff did seem capable of driving and he was not detained when the routine stop was completed (Walsh Depo. pgs. 15 & 18–20).

6. After this encounter, the plaintiff apparently ended up at a truck stop where he had stopped in the past. Andy Jorgenson, another employee of MD Transport, came in and called "dispatch" and told them the plaintiff was injured, a head injury which he thought needed stitches (Pl. Depo. pgs. 75–76, Jorgenson Depo. pg. 7). The plaintiff also called Twyla Douglas, his former fiancee, on the 10th, between 7:00 and 8:00 p.m., from the truck stop (Douglas Depo. pg. 32). He had not gotten medical attention at that time, but he told her he was injured when he was closing the truck doors, at the brewery, and something fell and hit him on the head. Later, he told her a light fell on him (Douglas Depo. pgs. 32 & 39).

7. Mr. Jorgenson had already seen the plaintiff on May 10.1995, at the brewery where they were both unloading, and they made arrangements to meet at a truck stop afterward (Jorgenson Depo. pg. 20). After Mr. Jorgenson's truck was unloaded, he proceeded directly to the truck stop which was about ten (10) minutes from the brewery; it was still daylight at this point (Jorgenson Depo. pg. 28).

8. When Jorgenson arrived at the truck stop, the plaintiff was sitting at a table with a former driver for MD Transport; they were drinking coffee (Jorgenson Depo. pgs. 30–31). The plaintiff had blood covered napkins on his forehead and he said, "I went to shut my doors, a light fell off the wall of the brewery and hit me in the head" and, further, he said that he was knocked to his knees and his hat was knocked off (Jorgenson Depo. pgs. 31 & 73). The plaintiff also said that when he left the brewery "they did a DOT inspection on him and one of the DOT men said that his head was bleeding" (Jorgenson Depo. pg. 33).

9. Mr. Jorgenson told the plaintiff to report the injury to the "dispatcher", which he did by calling Ray Keller, the dispatcher at the Auburndale scale house. The plaintiff said that Mr. Keller told him to have Mr. Jorgenson take him to the hospital (Jorgenson Depo. pgs. 33–34). Mr. Jorgenson then drove the plaintiff to the hospital (Jorgenson Depo. pg. 37), where the plaintiff received stitches. The two (2) men returned to the truck stop, had coffee, and then went to bed in their respective trucks (Jorgenson Depo. pgs. 43–44).

10. The hospital records indicate that the plaintiff was seen at the emergency room of Saint Elizabeth Medical Center, Granite City, on May 10, 1995, with a laceration to the left side of his forehead. The report states he was struck with a light, which was heavy enough to knock him to his knees (Ex. K to response to motion).

11. The next morning, Mr. Jorgenson met the plaintiff in the truck stop restaurant and the plaintiff reported having a headache (Jorgenson Depo. pg. 46). Jorgenson next saw the plaintiff in Florida, and had seen him three or four times since the accident at the date of the deposition, May 2, 1997 (Jorgenson Depo. pg. 51). Mr. Jorgenson states that he feels that the plaintiff has "lost something" since the accident, that formerly the plaintiff was "full of piss and vinegar" but now is "dull, reserved and quiet" (Jorgenson Affidavit [hereafter Aff.] pg. 2).

12. Also, on May 10, 1995, the plaintiff and Mr. Jorgenson were seen at the truck stop by Scott Beatty, another truck driver who knew both men. In fact, the men were together for about two (2) hours and ate dinner together. At the time, the plaintiff was dazed and had a big, bleeding cut on his head; Mr. Jorgenson was urging the plaintiff

to go to the hospital (Beatty Depo. pgs. 14–16 & 29–30). The plaintiff explained that he was closing the doors of his trailer at the brewery and a bulb hit him in the head and he fell to his knees. On leaving the brewery, the plaintiff said he was stopped by DOT and that was when he found out his head was bleeding (Beatty Depo. pgs. 18–21).

13. When Mr. Beatty saw the plaintiff about five (5) months after this incident, he says the plaintiff did not recall having seen him in St. Louis on May 10, 1995 (Beatty Depo. pgs. 21–22).

14. Another MD Transport employee, Greg Fuchs, stated that two (2) weeks after the plaintiff's injury he observed a broken light on the left side of Door 57 (where the plaintiff made the delivery on May 10, 1995). There was a piece of pipe conduit hanging down to which the light had been attached; two (2) wires were hanging out of the conduit, and there were pieces of the outside globe and the light bulb on the ground. In June or July of the same year, the same condition was observed by the affiant at Door 57 (Fuchs Aff.).

The Court cannot agree with the allegations of the defendants that the plaintiff has failed to raise a genuine issue of material fact as to this issue. Clearly, the evidence recited above is circumstantial but that is not enough to negate the plaintiff's *prima facia* case in the first instance. The circumstances surrounding the plaintiff's injury on May 10, 1995, could lead a reasonable jury to conclude that the plaintiff was injured on the property of the defendants' at that time and in that manner, this includes the contemporaneous statements made to various individuals in St. Louis and in Florida; the report of Mr. Fuchs regarding the condition of the light fixture at Door 57; and, importantly, the stop by Officer Walsh. The issues raised by the defendants regarding supposedly contradictory statements made by the plaintiff will have to be evaluated by the fact-finders to determine their impeachment value, if any. Everything reported by the plaintiff is, in fact, very nearly the same set of facts he is reporting to date. The motion for summary judgment on this issue is denied.

## B. PLAINTIFF HAS NOT AND CANNOT PROVE ANHEUSER BUSCH HAS ACTUAL OR CONSTRUCTIVE NOTICE OF THE ALLEGED DANGEROUS CONDITION

The defendants next allege that, under the applicable Missouri law, the plaintiff cannot establish, as he must, that the owner of the property, where his injury occurred, possessed actual or constructive knowledge of the alleged dangerous condition prior to the occurrence giving rise to the alleged duty.

The plaintiff asserts that at this time he is relying on *res ipsa loquitur,* the thing speaks for itself, as the basis of this lawsuit. The Court finds the plaintiff's response to the motion for summary judgment persuasive. Pursuant to *res ipsa loquitur* doctrine, the:

> happening of an injury permits an inference of negligence where plaintiff produces substantial evidence that injury was caused by an agency or instrumentality under exclusive control and management of defendant, and that the occurrence was such that in the ordinary course of things would not happen if reasonable care had been used.

*Black's Law Dictionary,* Fifth Edition (1979). This rule of law, which is accepted in most jurisdiction. allows the mere fact of the occurrence of the injury, taken in conjunction with surrounding circumstances, to raise a presumption of negligence or to establish a *prima facia* case, which presents a question of fact for the defendant to rebut.

> It is merely a short way of saying that the circumstances attendant on the accident are of such a nature as to justify a jury, in the light of common sense and past experience, in inferring that the accident was probably the result of the defendant's negligence, in the absence of explanation or other evidence which the jury believes . . .
>
> The [doctrine] is of unique, inestimable assistance to plaintiffs in situations in which the plaintiff is unable to reconstruct the specific facts. The law comes to the plaintiff's aid to permit the drawing of an inference of specific fault where there is no direct evidence of specific fault.

57B Am.Jur.2d § 1819, Negligence. It is undisputed that the applicable substantive law in this case is that of the State of Missouri, which state accepts the doctrine of *res ipsa loquitur.* See, *Carroll v. May Department Stores Co.,* 237 Mo.App. 983, 180 S.W.2d 793 (1944).

When a plaintiff relies upon the *res ipsa loquitur* doctrine, it is necessary for him to prove an occurrence or physical cause in addition to his injuries. "In general and on principle the doctrine res ipsa loquitur does not apply except when (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence." *Myers v. Moore,* 240 Mo.App. 726, 217 S.W.2d 291 (1949). As stated in *McCloskey v. Koplar,* 329 Mo. 527, 46 S.W.2d 557, 560[2], "the requirement that the instrumentality be under the management and control of the defendant does not mean, and is not limited to, actual physical control, 'but refers rather to the right of control at the time the negligence was committed.'" *Anderson v. Orscheln Bros. Truck Lines, Inc.,* 393 S.W.2d 452 (Mo.1965).

> The doctrine is based in part upon the consideration that plaintiff is not in a position to show the particular circumstances which caused the injuries while defendant, having the management and control of the instrumentalities involved, should possess the information essential to establishing the cause of the accident. It is a rule of evidence relating to the method, rather than the burden, of establishing the negligence. It excuses lack of precision in the proof of negligence, and in appropriate instances allows a prima facie inference of negligence against defendant without proof of specific acts of negligence and casts the burden of going forward with the evidence upon the defendant. It does not permit an inference as to what act produced the injury. The permissible inference is that a known act producing an injury was a negligence act. Negligence cannot be predicated upon an act until that act is known. Ordinarily, a plaintiff may not place such burdens upon a defendant by merely showing himself to be ignorant of the facts and that defendant should know the facts. An unlimited application of that reasoning would place too powerful a weapon in ignorance. Consequently, the rule is of restricted scope, to be applied in peculiar and exceptional cases where the demands of justice make its application essential. The reason for the rule is to be found in the particular case before plaintiff may invoke its application, and plaintiff should act in good faith in presenting all the evidence reasonably within his power. Also: "The plaintiff is bound by his evidence in a res ipsa case just as he would be in any ordinary negligence action and cannot in effect say to the jury, 'I have shown you exactly how the accident occurred but you are, nevertheless, still at liberty to speculate and presume it may have happened some other way . . .' Missouri is committed to the proposition that a plaintiff, having a res ipsa loquitur situation, who pleads the specific negligence causing his injuries is precluded from invoking the rule." (footnotes and citations omitted).

*Venditti v. St. Louis Public Service Co.,* 360 Mo. 42, 226 S.W.2d 599 (1950). See, *Williams v. St. Louis Public Service Co.,* 363 Mo. 625, 253 S.W.2d 97 (1952) (Submission under the doctrine may not be denied unless specific negligence, the real or precise cause, is definitely shown by direct evidence.)

The *res ipsa loquitur* rule shifts the burden of evidence upon the point of the identity of the party legally responsible, and calls upon the owner to overcome the presumption against it arising out of its ownership, custody and general control of the building. *Anderson v. Orscheln Bros. Truck Lines, Inc.,* 393 S.W.2d 452, 456.

> The fact that the fall (of heavy cylinders) was unexplained is no impediment to the application of the doctrine, in a case where the inference of negligence arises. The doctrine was applied notwithstanding the occurrence happened for no apparent reason or known cause in *McCloskey v. Koplar,* supra, and in *Kelly v. Laclede Real Estate & Inv. Co.,* 348 Mo. 407, 155 S.W.2d

90, 95, 138 A.L.R. 1065; *Lamprecht v. Krueger*, Mo.App., 46 S.W.2d 908; *Garfinkel v. B. Nugent & Bro. Dry Goods Co.*, Mo.App., 25 S.W.2d 122; and *Pollard v. J.J. Newberry Co.*, Mo.App., 228 S.W.2d 398. It should be applied in the circumstances of this case, which give rise to an inference of negligence . . .

*Id.* at 458.

Viewing the evidence in the light most favorable to the non-moving party, the plaintiff, the Court is convinced that the plaintiff has come forward with sufficient evidence to raise genuine issues of material fact under the *res ipsa loquitur* doctrine. He has clearly established the fact that an injury occurred, the defendants do not even attempt to deny the existence of the plaintiff's injury on May 10, 1995. That fact, taken in conjunction with surrounding circumstances, is enough to raise the presumption of negligence or establish a prima facia case which presents a question of fact for the defendant to rebut before the trier-of-fact. Accordingly, it is

**ORDERED** that the motion for summary judgment (Docket No. 50) be **denied.**